NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-2655-14T1

DEBORAH SPANGENBERG,

    Plaintiff-Respondent,

v.

DAVID KOLAKOWSKI,

    Defendant-Appellant.

_____

APPROVED FOR PUBLICATION

October 14, 2015

APPELLATE DIVISION

       Submitted September 21, 2015 - Decided October 14, 2015

       Before Judges Lihotz, Fasciale and Nugent.

       On appeal from Superior Court of New Jersey,
       Chancery Division, Family Part, Morris
       County, Docket No. FM-14-976-10.

       David Kolakowski, appellant pro se.

       Deborah Spangenberg, respondent pro se.

The opinion of the court was delivered by

LIHOTZ, P.J.A.D.

Defendant David Kolakowski appeals from a September 19, 2014 Family Part order denying his motion to terminate or suspend his obligation to pay alimony to his former wife, plaintiff Deborah Spangenberg. Defendant maintains plaintiff's cohabitation, combined with his decreased earnings, require termination of alimony under newly enacted subsection (n),

amending N.J.S.A. 2A:34-23. Defendant also moved to recalculate child support and the parties' obligation for college costs. Finally, defendant appeals from the November 7, 2014 order denying reconsideration.

We have considered the arguments in light of the record and applicable law. We reject defendant's argument to apply N.J.S.A. 2A:34-23(n) as the statutory provisions are inapplicable to post-judgment orders finalized before the statute's effective date. However, we agree a plenary hearing is necessary to determine whether a substantial change in economic circumstances warrants a modification of alimony and child support.

The essential facts are not disputed. The parties were divorced in June 2012, twenty years after they married. All collateral issues were resolved and set forth in a marital settlement agreement (MSA) incorporated into the final judgment of divorce (FJOD).

Specific to the issues on appeal, the MSA at paragraph 16 provided defendant's agreement to pay $2200 per month alimony, calculated using imputed annual incomes for plaintiff of $45,000 and defendant of $125,000. The parties agreed the alimony amount would be reviewed "on or about June 7, 2014," based on the "expectation that the [plaintiff]'s income will have

increased by that time as a result of additional training or other factors." Toward this objective, the parties consented to exchange income information including "their 2013 tax returns, W-2s, K-1 from [defendant's business] and other supporting documents, and their current paystubs, no later than June 1, 2014." Further, plaintiff agreed to inform defendant "when she [wa]s cohabiting with another," which triggered a review of alimony "consistent with the Gayet[1] case and evolving caselaw [sic]."

Regarding child support, paragraph 7 included the parties' agreement for defendant to contribute $122 per week to support the parties' two children. Anticipating future events, the parties' MSA set forth specific modified support amounts, using the child support guidelines and a "blended rate" of support in anticipation of college attendance and emancipation. These included: if one child was living at college and one was living with plaintiff and both were unemancipated, weekly child support would be $91; if one child was emancipated and the other was living at home, child support would be $78; and if one child was emancipated and the other was living at college, the weekly child support would be $52.

_____

[1]    Gayet v. Gayet, 92 N.J. 149, 155 (1983) (addressing the impact of cohabitation on alimony).

Paragraph 13 addressed college expenses, stating:

> The parties agree that, at the present time, neither party has the ability to pay for college for the children . . . . In the event that the parties' circumstances change, they shall revisit the issue of college contribution with a view toward a contribution proportionate to their respective financial circumstances. However, neither party shall be called upon to contribute to college if that party has not been consulted with regard to the cost of same and the selection of college.

Defendant moved to modify his alimony obligation, alleging plaintiff was cohabiting. Also, he sought to reduce child support because the parties' oldest child was residing with him. Plaintiff admitted she moved to her boyfriend's residence on August 31, 2013. She objected to a reduction in child support because the older child resumed living with her and the younger child was attending college in Washington, D.C.

The Family Part judge considered "the parties submissions[,] as well as their testimony" and the testimony of plaintiff's boyfriend.[2] As reflected in the statement of reasons accompanying the December 18, 2013 order, the judge found plaintiff received an economic benefit from cohabitation, warranting modification of alimony. He found plaintiff's actual income was higher and defendant's was lower than the amounts set

---

[2]    The hearing transcripts are not included in the record.

forth in the MSA; however, when he calculated alimony and child support, the judge used the MSA's imputed income figures. Defendant was ordered to pay $1350 per month alimony and $339 per week child support, until the older child commenced the spring 2014 semester in mid-January 2014, at which time child support would decrease to $150 per week.[3]

Defendant's motion for reconsideration seeking to review plaintiff's need for alimony was denied on March 26, 2014. Finding defendant's request "premature," the judge concluded "review shall take place in June of 2014." Reconsideration of that order was also denied.

On July 21, 2014, defendant moved to modify or terminate alimony, as provided by the MSA's two-year review provision. He sought enforcement of prior orders, application of the MSA provisions, emancipation of the older child, and a concomitant recalculation of child support. Plaintiff cross-moved for enforcement of litigant's rights because defendant stopped paying alimony.

The Family Part judge did not entertain oral argument prior to filing the September 19, 2014 order under review. Relying on

---

[3] The order included various computations resulting in credits to the parties. As is the case with this and the other orders under review, these computations for credits are indirectly subject to appeal to the extent they relate to alimony and child support calculations modified by our opinion.

the reduction in alimony ordered upon a finding of plaintiff's cohabitation and stating defendant's asserted reduction in income was "surely not a permanent situation," the judge denied further modification, despite plaintiff's "slight increase" in earned income. Without elaborating, the judge found "[d]efendant has 'chosen' not to divulge his financial documentation" and "[p]laintiff has graciously consented to emancipate [the older child]." Accordingly, using the MSA's imputed level for defendant and plaintiff's "actual" income, child support for the younger child was reset at $99 per week and defendant was ordered to pay 59% of the child's college expenses.

Defendant's subsequent motion for reconsideration of these determinations resulted in the November 7, 2014 order, which denied his requests to reduce alimony, child support, and college costs. In the accompanying statement of reasons, the judge found "[d]efendant produced page 1 of his 2012 tax return and pages 1 and 2 of his 2013 tax return. No W-2[]s, K-1[]s, 1099[]s [or] tax schedules were produced," nor did he supply the income tax return for his sub-chapter S corporation. The judge concluded: "Defendant continues to focus on the calculation of his income[,] but has failed and/or refused to present his complete financial picture. Self-employed individuals are

always subject to more scrutiny when it comes to their finances." Acknowledging income averaging may be appropriate when determining the earnings of self-employed individuals for support purposes, the judge nonetheless, declined to do so because defendant "failed to provide sufficient financial documentation." This appeal ensued.[4]

When reviewing a trial judge's order, we defer to factual findings "supported by adequate, substantial, credible evidence." <u>Gnall v. Gnall</u>, __ <u>N.J.</u> __ (2015) (slip op. at 14) (citing <u>Cesare v. Cesare</u>, 154 <u>N.J.</u> 394, 411-12 (1998)). Reversal is warranted only when a mistake must have been made because the trial court's factual findings are "'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice . . . .'" <u>Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.</u>, 65 <u>N.J.</u> 474, 484 (1974) (quoting <u>Fagliarone v. Twp. of N. Bergen</u>, 78 <u>N.J. Super.</u> 154, 155 (App. Div.), <u>certif. denied</u>, 40 <u>N.J.</u> 221 (1963)). On the other hand, a "trial judge's legal conclusions, and the application of those conclusions to the

---

[4]    On May 12, 2015, plaintiff filed a Family Part case information statement with accompanying financial documentation, with her merits brief. Certainly the facts set forth in these documents are relevant; however, because this information was not presented in the motions before the Family Part, we will not consider it in our review.

facts, are subject to our plenary review." <u>Reese v. Weis</u>, 430 <u>N.J. Super.</u> 552, 568 (App. Div. 2013).

Defendant maintains the judge abused his discretion in ignoring the terms of the MSA when denying his request to modify alimony and child support despite evidence of changed circumstances. Further, he argues the judge erroneously imposed college expense obligations using an artificially high imputed income. Arguing he should have been granted a plenary hearing on these issues, defendant also asserts adopted amendments to the alimony statute addressing cohabitation were ignored. Finally, he asserts the determinations regarding the inadequacy of his financial disclosures and plaintiff's continued need for support were unfounded.

The Family Part judge's authority to modify alimony and support orders is found in <u>N.J.S.A.</u> 2A:34-23, which states:

> Pending any matrimonial action . . . brought in this State or elsewhere, or after judgment of divorce . . . the court may make such order as to the alimony or maintenance of the parties, and also as to the care, custody, education and maintenance of the children, . . . as the circumstances of the parties and the nature of the case shall render fit, reasonable and just . . . . Orders so made may be revised and altered by the court from time to time as circumstances may require.

Our courts have interpreted this statute to require a party who seeks modification to prove "changed circumstances[.]"

Lepis v. Lepis, 83 N.J. 139, 157 (1980) (citation omitted). Other circumstances considered include "whether the change in circumstance is continuing and whether [an] agreement or decree has made explicit provision for the change." Id. at 152. Accordingly, each and every motion to modify support "rests upon its own particular footing and the appellate court must give due recognition to the wide discretion[,] which our law rightly affords to the trial judges who deal with these matters." Martindell v. Martindell, 21 N.J. 341, 355 (1956). See also Innes v. Innes, 117 N.J. 496, 504 (1990) ("The modification of alimony is best left to the sound discretion of the trial court."). While an "abuse of discretion . . . defies precise definition," we will not reverse the decision absent a finding the judge's decision "rested on an impermissible basis[,]" considered "irrelevant or inappropriate factors[,]" Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571-72 (2002) (citations and internal quotation marks omitted), "failed to consider controlling legal principles or made findings inconsistent with or unsupported by competent evidence." Storey v. Storey, 373 N.J. Super. 464, 479 (App. Div. 2004).

In Lepis, the Court described a test to discern when financial circumstances have significantly changed from those underpinning an order under review, in this way: "The supporting

spouse's obligation is mainly determined by the quality of economic life during the marriage, not bare survival. The needs of the dependent spouse and children contemplate their continued maintenance at the standard of living they had become accustomed to prior to the separation." Lepis, supra, 83 N.J. at 150 (citations and internal quotations omitted).

For decades this standard has guided the exercise of reasoned discretion of our Family Part judges. Recently, the Legislature adopted amendments to N.J.S.A. 2A:34-23, designed to more clearly quantify considerations examined when faced with a request to establish or modify alimony. L. 2014, c. 42, § 1. Apt to this matter, the amendments include provisions regarding modification of alimony and the effect of a dependent spouse's cohabitation, stating:

> l. When a self-employed party seeks modification of alimony because of an involuntary reduction in income since the date of the order from which modification is sought, then that party's application for relief must include an analysis that sets forth the economic and non-economic benefits the party receives from the business, and which compares these economic and non-economic benefits to those that were in existence at the time of the entry of the order.
> m. When assessing a temporary remedy, the court may temporarily suspend support, or reduce support on terms; direct that support be paid in some amount from assets pending further proceedings; direct a periodic review; or enter any other order the court

finds appropriate to assure fairness and equity to both parties.

n. Alimony may be suspended or terminated if the payee cohabits with another person. Cohabitation involves a mutually supportive, intimate personal relationship in which a couple has undertaken duties and privileges that are commonly associated with marriage or civil union but does not necessarily maintain a single common household.

[N.J.S.A. 2A:34-23(l)-(n).]

The statute also lists factors to be examined "when assessing whether cohabitation is occurring[.]" N.J.S.A. 2A:34-23 (n)(1) to (7).

Here, plaintiff conceded she began cohabiting on August 31, 2013. Accordingly, our review is limited to whether the statute's cohabitation amendments, requiring alimony to be terminated or suspended, apply. To examine whether the Legislature intended N.J.S.A. 2A:34-23(n) to affect agreements or orders adopted prior to its enactment, we turn to rules guiding statutory review.

> The goal of all statutory interpretation "is to give effect to the intent of the Legislature." Aronberg[ v. Tolbert], 207 N.J. [587,] 597 [2011]. We first look to the statutory language, which generally is the "best indicator" of the Legislature's intent. DiProspero v. Penn, 183 N.J. 477, 492 (2005). Only if the language of the statute is shrouded in ambiguity or silence, and yields more than one plausible interpretation, do we turn to extrinsic

> sources, such as legislative history. Id.
> at 492-93.
>
> [Maeker v. Ross, 219 N.J. 565, 575 (2014).]

Courts generally will enforce newly enacted substantive statutes prospectively, unless the laws clearly expresses a contrary intent.

The amendments to N.J.S.A. 2A:34-23 themselves do not contain language specific as to implementation, except to provide the amendments are effective immediately, on September 10, 2014. However, the bill adopting the alimony amendments adds this provision:

> This act shall take effect immediately and shall not be construed either to modify the duration of alimony ordered or agreed upon or other specifically bargained for contractual provisions that have been incorporated into:
>
> a. a final judgment of divorce or dissolution;
>
> b. a final order that has concluded post-judgment litigation; or
>
> c. any enforceable written agreement between the parties.
>
> [L. 2014, c. 42, § 2.]

This additional statement signals the legislative recognition of the need to uphold prior agreements executed or final orders filed before adoption of the statutory amendments.

Here, the MSA provided for a review of defendant's alimony obligation upon plaintiff's cohabitation. Moreover, the parties' agreement anticipated application of "evolving case[]law," recognizing their rights and obligations would be refined in the event of cohabitation.

In December 2013, the court conducted such a review of the economic effect of plaintiff's admitted cohabitation. In light of the then current case law, the judge reduced alimony based on the economic benefit received by the dependent spouse. Reese, supra, 430 N.J. Super. at 570-71. He determined plaintiff received an economic benefit from cohabiting, established plaintiff's monthly need at $5828, and noted plaintiff's 2013 gross income increased more than 13.5% and defendant's actual 2012 income decreased 8.9% from the levels imputed in the MSA. However, the judge concluded "the parties agreed and bargained for a $125,000 imputation to [d]efendant and a $45,000 imputation to [p]laintiff as their annual incomes," which he used and reduced alimony from $2200 per month to $1350 per month. The order was not appealed, making this determination final.

Because the post-judgment order became final before the statutory amendment's effective date, the new cohabitation provisions do not apply or otherwise impact the alimony

determination. Accordingly, the order reducing alimony supported by substantial evidence in the record, to which the judge correctly applied the law, shall not be altered.

Defendant also challenges plaintiff's adequate need for alimony and his ability to pay support because of changed economic circumstances. When asked to consider this in the course of earlier motions, the judge declined because the issue was "not ripe[,]" interpreting the MSA to prohibit modification based on income reductions prior to June 7, 2014. Defendant's subsequent motion for a plenary hearing to determine plaintiff's needs and his ability to pay were denied. Each time, the judge reiterated alimony review would not be undertaken until June 7, 2014. Once the trigger date passed, defendant again applied for relief, which again was denied.

Concerning the rejection of defendant's request for a plenary hearing, he argues the trial judge ignored both the need for imputation of additional income to plaintiff and facts proving significant changes in the parties' financial circumstances since the FJOD's entry. Instead, the judge found defendant's application was "not justified," and denied relief in the September 19, and November 17, 2014 orders. He reasoned the business's loss of one of two customers was "typically indicative of a temporary change" and defendant's alleged

decrease in income was "surely not a permanent situation." The judge also concluded defendant had "chosen" not to divulge his financial information, but did not describe the missing financial disclosure. Finally, the judge did not address defendant's claim maintaining plaintiff failed to disclose her income information as required by the MSA.

We find the record does not support these findings. Accordingly, we reverse and remand the challenged orders.

Defendant had been claiming a business downturn and an inability to earn $125,000 since entry of the FJOD. Plaintiff's rejection of these claims based on her knowledge of how defendant's business worked creates a material dispute of fact, implicating questions of credibility. In his motion, defendant supplied his case information statement executed on February 10, 2014, attached pay stubs from June 2 to June 20, 2014, his 2013 federal Form K-1 recording distributions from his business; and his 2013 individual federal income tax Form 1040, with schedules. Plaintiff's cross-motion included her case information statement executed on August 12, 2014, and attached two pages from her 2013 individual federal income tax Form 1040, her 2013 W-2, and pay stubs for the period June 23, 2014 to August 3, 2014. In their respective motions, both parties

decried the sufficiency of the other's submission.[5] Perhaps oral argument would have illuminated whether additional discovery was actually necessary. Nevertheless, we determine defendant's submissions satisfactorily presented a prima facie showing of a decrease in income. Further examination of defendant's and plaintiff's change in earnings should have occurred through an evidentiary hearing. We discern no factual support for the trial judge's finding that defendant's efforts to increase earnings and reduce expenses following customer losses could be assumed to be "temporary" or otherwise within his control. Another issue raised, but never addressed, was whether plaintiff complied with the expectations set forth in the MSA to enhance her earning capacity. The failure to consider these crucial elements of the parties' financial circumstances require the order denying review of alimony to be reversed.

The material factual disputes presented by the parties' pleadings bear directly on the legal conclusions required to be made and these disputes can only be resolved through a plenary hearing. Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007) (stating a plenary hearing is necessary when the parties'

---

[5]  Plaintiff's completed case information statement filed with this court may more comprehensively satisfy the MSA's requisites for disclosure. However, this was not provided to the trial court and the case information statement presented to and relied upon by the trial judge was incomplete.

submissions show a genuine and substantial factual dispute).
Importantly, "[t]he credibility of the parties' contentions may
wither, or may be fortified, by exposure to cross-examination
and through clarifying questions posed by the court[]" in a
plenary hearing. Barblock v. Barblock, 383 N.J. Super. 114, 122
(App. Div.), certif. denied, 187 N.J. 81 (2006).

Further, the level of the parties' respective incomes bears
directly on the amount of child support, and whether and to what
extent they are able to contribute to college costs. Absent an
accurate determination of the parties' incomes, the ordered
child support and college payments are unfounded and also must
be reversed.[6]

Accordingly, the provisions of the September 19, 2014 order
denying defendant's motion to review alimony, fix child support,
and establish college contributions, must be vacated. The
matter is remanded for further proceedings and a plenary
hearing. Provisions in the November 7, 2014 order addressed to
these same issues are also vacated. On remand, a different

---

[6]    We reject defendant's challenge to the judge's disregard of
the MSA's child support step-down provisions. The change in
alimony, as ordered in December 2013, was sufficient to
disregard the child support contingencies set forth in the MSA,
because these levels of child support were not only based on the
parties' respective imputed incomes, but also the initial level
of alimony of $2200 per month. Once the latter was changed, the
MSA support contingencies were no longer applicable.

Family Part judge must conduct the proceeding, as prior orders incorrectly drew credibility determinations.

We add these additional comments to arguments raised by defendant on appeal. First, understanding defendant is the sole stockholder of his corporate employer, prior to conducting a plenary hearing regarding defendant's modification request, the court should conduct a case management conference to determine the applicability of N.J.S.A. 2A:34-23(l). As necessary, the judge may allow discovery. Second, absent circumstances permitted by law, plaintiff's boyfriend's income is not subject to review, except perhaps as proof of plaintiff's rental payments. Third, in fixing child support, the court must delineate the expenses determined to be covered by the support award. Finally, when computing college contributions, the court must initially determine the parties' ability to pay, acknowledging defendant's obligation to satisfy any ordered alimony and child support prior to determining his ability to make college contributions.

Affirmed in part, reversed in part, and remanded for a plenary hearing. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION