**RECORD IMPOUNDED**

### NOT FOR PUBLICATION WITHOUT THE
### APPROVAL OF THE APPELLATE DIVISION

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1636-20

B.C.,[1]

     Plaintiff-Respondent,

v.

J.L.,

     Defendant-Appellant.

_____

> Submitted December 14, 2021 – Decided December 23, 2021
>
> Before Judges Rothstadt and Mayer.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FV-02-0851-21.
>
> David Jay Glassman, attorney for appellant.
>
> Carter, Van Rensselaer and Caldwell, attorneys for respondent (William J. Caldwell, on the brief).

PER CURIAM

---

[1] In accordance with Rule 1:38-3(d)(10), we designate the parties by their initials.

Defendant J.L. appeals from a January 13, 2021 amended order granting a final protective order (FPO) in favor of plaintiff B.C. under the Sexual Assault Survivor Protection Act (SASPA), N.J.S.A. 2C:14-13 to -20. Defendant asserts the trial judge erred in finding that he posed a possibility of future risk to plaintiff's safety or well-being under SASPA's second prong, N.J.S.A. 2C:14-16(a)(2), and plaintiff failed to meet his burden for the issuance of an FPO. We reverse and remand to the trial court for detailed findings in support of plaintiff's entitlement to an FPO under the second prong of SASPA. Pending the remand proceeding, the temporary protective order (TPO) granted to plaintiff shall be reinstated.

The following facts are based on the testimony of plaintiff and defendant during the two-day Zoom trial. Plaintiff's employer scheduled an appointment for plaintiff to provide defendant with an estimate for roofing work at defendant's home. On August 21, 2020, plaintiff arrived at defendant's house at approximately 8:15 p.m., took measurements, inspected the roof, and then entered defendant's home to discuss the estimate.

After concluding the sales presentation, plaintiff accepted defendant's offer of a beer. As defendant poured the beer, plaintiff noticed the glass contained an "inch or two" of clear liquid. Although plaintiff was concerned the

glass was dirty, he drank the beer, believing the liquid "was probably just some clean water from rinsing the glass."

After consuming the first beer, plaintiff remembered defendant offering a second beer, but did not remember seeing defendant pour the second beer. The next thing plaintiff remembered was waking up, seeing defendant "completely naked," and defendant's mouth "on [his] penis." Plaintiff pulled up his pants, left defendant's house, and ran to his car. Plaintiff explained he never consented to a sexual encounter with defendant.

Five to seven days after the encounter, defendant sent a text message to plaintiff. Because plaintiff did not provide his cellular telephone number to customers, plaintiff was surprised to receive defendant's text message. In the text message, defendant asked plaintiff when he would be in the area to review a revised roof plan. Plaintiff did not respond to the message and blocked defendant's number.

When asked how he felt after receiving defendant's text message, plaintiff stated "[his] heart dropped," he was "shocked" and "livid," and he experienced "fast breathing, tightness in [his] chest." Plaintiff testified "[he] never wanted to even think about this incident ever again, let alone be contacted by this person." Plaintiff told the judge he "would live [his] life [with] so much with

3

less stress if [he knew] that by law, [defendant] ha[d] no right to contact [him], ever."

During his testimony, defendant provided a different version of the events. According to defendant, after plaintiff drank the first beer, defendant offered plaintiff a shot of vodka and plaintiff accepted. Defendant also drank a shot of vodka. Defendant claims plaintiff stayed in his home past midnight, and the two discussed defendant's finances, investments, current events, and some "personal affairs."

According to defendant, plaintiff asked to take a picture with defendant. After taking the picture, defendant claimed plaintiff "made advances" and "started touching [him] a little bit more and groping [him]." Defendant testified plaintiff unbuttoned defendant's pants and performed fellatio. Defendant stated plaintiff unbuttoned his own pants, "grabbed" defendant's head with both hands, and "forced" defendant's head toward plaintiff's penis. Defendant testified to feeling uncomfortable, and explained the encounter ended with plaintiff leaving the house.

Defendant admitted sending a text message to plaintiff but only after defendant received a follow up telephone call from plaintiff's employer about the roofing work.

A-1636-20

Defendant told the judge he had no work involvement with plaintiff or plaintiff's employer and shared no mutual friends with plaintiff. At the time of trial, defendant did not live in the same community as plaintiff and did not know where plaintiff lived. According to the testimony, defendant had no plan to contact plaintiff in the future and declined to hire plaintiff's roofing company because the price for the work was too expensive.

Nearly two and one-half months after the encounter, plaintiff filed a complaint seeking a protective order under the SASPA. The judge issued a TPO to plaintiff on that same day.

On the initial trial date, because defendant retained counsel, plaintiff expressed a desire to retain an attorney and requested an adjournment. On December 10, 2020, both parties appeared for trial with counsel. The Zoom trial took place on December 10 and December 23, 2020. Only plaintiff and defendant testified during the trial.

After hearing the testimony, the judge entered an FPO in favor of plaintiff.[2] He found plaintiff satisfied the first prong of N.J.S.A. 2C:14-16(a). The judge's finding on that prong is not challenged on appeal.

---

[2] The original FPO was entered on December 23, 2020. An amended FPO, correcting a misspelling of defendant's name, was entered on January 13, 2021.

A-1636-20

The trial judge further found plaintiff satisfied the second prong of N.J.S.A. 2C:14-16(a) because the encounter left plaintiff "traumatized." The judge concluded that plaintiff testifying and retelling the incident in the courtroom helped plaintiff "get[] over the trauma."

While the judge was rendering his decision on the second prong, defendant interrupted the judge. The judge then admonished defendant and warned him not to interrupt the court proceeding. After resuming his oral decision, the judge determined plaintiff's well-being required the entry of an FPO and stated he relied on "case law and the statute and the facts that were presented to [him]." No additional fact-findings were set forth on the record.

On appeal, defendant argues the judge erred in entering an FPO, focusing his argument on the judge's finding that plaintiff satisfied the second requirement of SASPA, N.J.S.A. 2C:14-16(a)(2). Defendant requests reversal of the FPO based on the lack of credible evidence supporting the possibility of future risk to plaintiff's safety or well-being.

"Because of the family courts' special jurisdiction and expertise in family matters, appellate courts should accord deference to family court factfinding." Cesare v. Cesare, 154 N.J. 394, 413 (1998). We are bound by trial court findings "when supported by adequate, substantial, credible evidence." Id. at 411-12.

6

This is "especially appropriate" when evidence involves questions of credibility because the family part judge had an opportunity to observe the witnesses first-hand. Id. at 412.

However, "a trial court must 'find the facts' in its oral or written opinion and state 'the reasons supporting its decision to grant or deny' [the FPO]." In re D.L.B., 468 N.J. Super. 397, 416 (App. Div. 2021) (citation omitted) (quoting R. 1:7-4(a)). A "judge's legal conclusions, and the application of those conclusions to the facts," are subject to our de novo review. Gormley v. Gormley, 462 N.J. Super. 433, 443 (App. Div. 2019) (quoting Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015)).

SASPA provides:

> [T]he standard for proving the allegations made in the application for a protective order shall be a preponderance of the evidence. The court shall consider but not be limited to the following factors:
>
> > (1) the occurrence of one or more acts of nonconsensual sexual contact, sexual penetration, or lewdness, or any attempt at such conduct, against the alleged victim; and
> >
> > (2) the possibility of future risk to the safety or well-being of the alleged victim.
>
> [N.J.S.A. 2C:14-16(a).]

7

The statute does not define the terms "possibility," "risk," "well-being," or "safety." Because there are few published cases defining these terms, the judge adopted the reasoning from our unpublished opinion in M.M. v. M.P., No. A-4499-16 (App. Div. February 21, 2019).[3]

In citing M.M., the judge considered the term "risk" as the possibility of loss or injury or someone or something that creates or suggests a hazard. As in M.M., the judge relied on the possibility of defendant attempting to engage in nonconsensual sexual conduct against plaintiff. In M.M., addressing the meaning of the word "safety" and "well-being," we held that "a person of reasonable intelligence can comprehend the ordinary meaning of those words as requiring a finding that a victim would not be safe or 'happy, healthy, or prosperous,' if he or she was subjected to sexual violence from the defendant." M.M., slip op. at 11. We defined "possibility" as "a chance that something might exist, happen, or be true." Ibid.

Here, the judge omitted detailed fact-findings to support plaintiff's satisfaction of the second prong of SASPA. Although the judge stated plaintiff

---

[3] Rule 1:36-3 limits a trial court judge's citation to or reliance upon unpublished decisions because such opinions do not have precedential authority. However, nothing precludes a trial court judge from adopting the reasoning stated in an unpublished opinion so long as the judge does not feel bound by such a decision.

testified credibly to being traumatized by the incident, the judge failed to cite proofs in the record to support that conclusion. There is no documentary evidence showing plaintiff suffered from post-traumatic stress disorder, panic attacks, or any other kind of psychological affliction due to the encounter.

The obvious fact that plaintiff would live a less stressful life if defendant legally could not contact him, without more, is insufficient to satisfy the second prong of N.J.S.A. 2C:14-16(a). Recently our Supreme Court held the mere possibility a defendant "may now harbor a grudge against the plaintiff" for initiating legal proceedings is insufficient to meet the second prong of N.J.S.A. 2C:14-16(a). C.R. v. M.T., 248 N.J. 428, 448 (2021). According to the Court, if that were the case, "prong two would be met in every single SASPA case." Ibid. (emphasis in original). The Court rejected the concept that any chance or possibility of future contact satisfies the second prong. Ibid. Thus, the Court remanded the issue to the trial judge for a more particularized showing of future risk, finding satisfaction of the second prong of SASPA to be more than a mere formality. Ibid.

Plaintiff asserts he met his burden of proof under SASPA's second prong. Despite the fact defendant has never contacted him since the one text message, plaintiff testified he suffers anxiety. However, plaintiff presented no

corroborating evidence of his anxiety. Plaintiff also testified his life would be less stressful if defendant were precluded from contacting him ever again. Plaintiff contends this evidence supported the judge's findings under SASPA's second prong to issue an FPO.

The limited evidence recounted during the judge's oral decision is insufficient to satisfy SASPA's second prong. The entry of an FPO will always provide a victim with a feeling of safety and security against future contact from a defendant. Further, merely testifying in court cannot satisfy SASPA's second prong. To so hold would mean every victim who files a SASPA claim and then testifies in court would satisfy the possibility of a future risk to his or her safety or well-being.

Here, defendant never tried to contact plaintiff after sending the single text message. Plaintiff and defendant did not live in the same community. Nor did defendant hire plaintiff's employer to perform work at his home. As a result, it appears unlikely that the two men will cross paths in the future such that plaintiff's safety and well-being were at risk.

We agree with defendant that SASPA requires plaintiff present more than a generalized fear or anxiety about future contact. Otherwise, every plaintiff

10

would satisfy SASPA's second prong based on his or her subjective belief there might be an encounter with a defendant in the future.

Reversed and remanded for proceedings consistent with this opinion. Until completion of the remand proceeding, the TPO shall be reinstated and remain in full force and effect. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11

A-1636-20