# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1849-22

IN THE MATTER OF THE
APPLICATION OF:
MICHAEL MARKER

TO CHANGE THE NAME OF:
OWEN J. CAMAYA,

TO:
OWEN J. CAMAYA-MARKER.

_____

Submitted December 13, 2023 – Decided January 12, 2024

Before Judges Accurso and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FD-14-0190-23.

Manzi, Esptein, Lomurro & Decataldo, LLC, attorneys for appellant Marie Camaya (Ashley Vallillo Manzi, of counsel and on the briefs; Nikki T. Caruso, on the briefs).

Jardim, Meisner & Susser, PC, attorneys for respondent Michael Marker (Jessica Ragno Sprague, of counsel and on the brief).

PER CURIAM

Marie Camaya appeals from a January 18, 2023 order and judgment granting Michael Marker's application to change the name of the parties' minor child from "Owen James Camaya" to "Owen James Camaya-Marker." Defendant argues the Family Part judge erred in failing to identify and analyze the specific factors set forth in the governing case law to determine whether the name change was in Owen's[1] best interest. We agree and thus reverse and remand for a new hearing.

The relevant facts are not in dispute. The parties are the parents of Owen James Camaya-Marker (formerly Owen James Camaya) born October 6, 2018. At the time of this application, Owen was four years old. The parties were never married and only dated briefly while living in California.

By the time of Owen's birth, Marie had ceased communication with Michael. Marie did not inform Micheal of Owen's birth, his name, or any other information concerning Owen.

According to Michael, he discovered Owen had been born "through a change in [defendant's] profile picture that is public on social media . . . ." Michael maintains that he immediately attempted to reach Marie to no avail and

_____

[1] We refer to the parties and the minor child by their first names for ease of reference only and intend no disrespect.

A-1849-22

was therefore "denied the ability to participate in the choice of [Owen's] name . . . ."

When Owen was approximately two years old, Marie relocated from California to New Jersey with Owen. She did not inform Michael of her intention to relocate to New Jersey and did not seek Michael's consent to remove Owen from the State of California. It was not until January 2021 that Marie officially told Michael that Owen had been born in October 2018 and that she and Owen had relocated from California to New Jersey. Michael met Owen for the first time on February 16, 2021.

At the time, Owen bore Marie's surname, Camaya. Upon learning that Marie and Owen had moved to New Jersey, Michael relocated to New Jersey and filed a complaint for joint legal custody and a legal name change specifically to add his surname to Owen's existing surname so that the child's name would include the surnames of both parents.

On June 21, 2022, the parties resolved the custody issues by entering into a Custody and Parenting Time Agreement, wherein they agreed to joint legal custody of Owen. On June 29, 2022, the judge entered an order incorporating the parties' Custody and Parenting Time Agreement, terminated the order of support because of the joint custody agreement, and further ordered that the

name change issue would be addressed in a separate hearing.[2]  On January 18, 2023, the parties appeared and testified at the rescheduled name change hearing, and the judge issued an oral opinion on that same date.

At the hearing, Marie testified that Owen had been diagnosed with autism in August 2021 and presented the judge with Owen's occupational therapy evaluations from May 17, 2021, June 2, 2021, June 14, 2021, and August 16, 2021, showing that "Owen present[ed] with underlying deficits with sensory integration, sensory perception, reactivity and modulation as well as decreased proximal stability and upper extremity interjoint coordination and distal control."  It was also noted in at least one of these reports that "[h]e has difficulty with grasp patterns and manipulation of materials," and with respect to Owen's social skills, one assessment further noted that:

> Owen continues to have difficulties with social communication, imitation and continues to be inflexible in his play and with daily activities.  He seems to be very involved with numbers, letters, spelling and humming.  Today's observations are concerning being "red flags" for [a]utism spectrum disorder, however, Owen has little of repetitive behaviors and he seems to communicate well with mom, by looking at her, sharing his achievements, checking in with her, making eye contact with her.  He

---

[2] On June 30, 2022, the judge denied Michael's first application for a legal name change for Owen, without prejudice, finding it procedurally deficient because plaintiff had failed to serve the Director of the Division of Criminal Justice.

A-1849-22

does show restricted interests, ex. counting, or wanting activities performed in a certain way, he has echolalia, and he continues to engage in verbal self-stim behavior (humming).

During the hearing, Marie testified that as a result of his autism, Owen would struggle with the adjustment of a name change. In a colloquy with the judge, Marie conveyed her belief there would be an adverse reaction or setback as he was "going by Owen Camaya at school, by Owen Camaya with friends, like, writing and all of those things . . ." and that "it will take a little bit for him to fully understand and grasp why that's changing."

Referring to the results from medical testing and an evaluation he had secured, Michael maintains that Owen is not autistic. He based his conclusion on the neurological report prepared by doctors at the St. Barnabas Institute of Neurology and Neurosurgery in September 2022. They determined that "Owen is not autistic." The report concluded that Owen's "[s]ocialization and conversational skills are very slightly delayed," yet "his interpersonal communication skills, fine motor skills, and gross motor skills seem to be within normal limits for age." According to the evaluating doctor's report, "suspicion for autism spectrum disorder in Owen is low based on the history provided and the exam conducted[.]" The report recommended plaintiff have Owen evaluated for "possible high-functioning autism," which took place in October 2022. The

5

summary report from that evaluation classified Owen as "non-spectrum" and explained "that Owen's scores are within the range of a high proportion of the participants with non-spectrum diagnoses," though he did "demonstrate[] a few symptoms in the social affect category[.]"  Plaintiff contends that  Marie has labeled Owen with a diagnosis he does not have, and that is unsupported by the medical evidence.  He attributes some of Owen's behaviors to Marie's influence and interference and suggests that she contributes to Owen's anxiety.

In his brief opinion, the judge summarized the facts and applicable law and addressed some, although not all, of the factors adopted in Emma v. Evans, N.J. 197, 222 (2013), stating:

> The [c]ourt notes that the parties have joint, legal, and physical custody and parenting time is split fairly evenly between the two parents.  So the child identifies with both family units.  With respect to any potential anxiety, embarrassment or discomfort, there has not been anything provided to the [c]ourt that indicates that any medical condition or any testimony by a medical expert that a change in name would create potential anxiety, embarrassment or discomfort.  The child is not old enough to express a preference to the name.  The -- the [c]ourt does not find that there is any improper motivation on Mr. Marker's part to -- to request this name change.  And so after reviewing all the factors, after reviewing the testimony of, both, Mr. Marker and Ms. Camaya, the [c]ourt finds that there is a good-faith basis.  This application has been made in good faith to change the name and will grant the application to

change the name of Owen J. Camaya to Owen J. Camaya Marker.

The judge did not make any specific findings concerning Marie's claims that Owen had been diagnosed with autism and the import of any such diagnosis, if found, on the within application. Rather, the judge concluded that there was "a good-faith basis" to grant Michael's application to add his surname to Owen's existing surname, which was given to him by his mother at birth.

This appeal followed.

Appellate courts "review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). Those findings are therefore binding on appeal "when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411-12. Reversal occurs "only when a mistake must have been made because the trial court's factual findings are 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice. . . .'" Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484

A-1849-22

(1974)).  Questions of law are reviewed de novo.  Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020).

"Today, 'the best interests of the child' is the applicable standard governing most decisions affecting the welfare of children."  Gubernat v. Deremer, 140 N.J. 120, 139 (1995).  Courts "are required to engage in meticulous fact-finding to determine the 'best interests' of the child."  Ibid. "That standard is also the one that we apply in determining the appropriate surname to be given to a child, regardless of the child's birth status."  Ibid.

Pursuant to Rule 1:7-4, "the [family court] must state clearly its factual findings and correlate them with the relevant legal conclusions," Curtis v. Finnerman, 83 N.J. 563, 570 (1980), including in deciding a name change dispute, Gubernat, 140 N.J. at 125-26.  Mere "[n]aked conclusions do not satisfy the purpose of [Rule] 1:7-4."  Curtis, 83 N.J. at 570.

In Emma v. Evans—the seminal case we use to resolve disputes between parents over their child's jointly-chosen surname—the Court held that a parent seeking to change a child's birth surname must show by "a preponderance of the evidence that the name change is in the child's best interest."  215 N.J. 197, 222 (2013).  "Applying the best-interests-of-the-child test in the context of a dispute

over whether to change a child's name requires a fact-sensitive analysis" and "[e]ach case should be weighed on its own merits." Id. at 222.

In evaluating whether the name change is in the child's best interest, courts consider the following eleven factors:

> (1) The length of time the child has used her given surname. (2) Identification of the child with a particular family unit. (3) Potential anxiety, embarrassment, or discomfort that may result from having a different surname from that of the custodial parent. (4) The child's preference if [h]e is mature enough to express a preference. (5) Parental misconduct or neglect, such as failure to provide support or maintain contact with the child. (6) Degree of community respect, or lack thereof, associated with either paternal or maternal name. (7) Improper motivation on the part of the parent seeking the name change. (8) Whether the mother has changed or intends to change her name upon remarriage. (9) Whether the child has a strong relationship with any siblings with different names. (10) Whether the surname has important ties to family heritage or ethnic identity. (11) The effect of a name change on the relationship between the child and each parent.
>
> [Id. at 223.]

We consider that both parties have addressed the eleven best interest factors found in Emma v. Evans, each arguing the strength of their respective positions. Marie contends that the judge "erroneously ordered the name change of a minor child, diagnosed with [autism] without proper consideration for the

child's best interest." She argues the judge "did not make a complete and comprehensive finding on the record" and did not complete a best interest analysis for the proposed change to Owen's surname.

Michael argues the judge properly applied all applicable factors and granted the application based on the evidence presented. He also disputes Marie's testimony that Owen was diagnosed with autism and consequently may have difficulty processing the name change at school and with his friends and that this is a basis to deny the application. He maintains that Marie admitted that there is also a report indicating that Owen was not autistic.

Here, the judge addressed many of the eleven factors as part of his best interest analysis, including the length of time Owen had used his given surname; his identification with a particular family unit; potential anxiety, embarrassment, or discomfort from having a different surname from that of the custodial parent; Owen's age (four) and inability to express a preference; and plaintiff's motivation for seeking a name change stating, "the [c]ourt does not find that there is any improper motivation on Mr. Marker's part to [] request this name change[.]" The judge also noted that "[w]ith respect to any potential anxiety, embarrassment or discomfort, there has not been anything provided to the [c]ourt that indicates that any medical condition or any testimony by a medical

expert that a change in name would create potential anxiety, embarrassment or discomfort." After reviewing these factors, the judge concluded there was a good faith basis to grant Michael's application to change Owen's surname from Camaya to Camaya-Marker.

Although the judge may have believed he implicitly addressed the issue of Owen's autism noting there was no medical evidence about anxiety, he did not squarely address what was obviously the critical dispute between these parents of whether Owen was autistic and the potential impact of such a diagnosis, if established, on the name change application. Thus, although the judge appropriately considered most of the Emma factors, he did not make factual findings on the critical issue of Owen's autism diagnosis or make a best interest finding. Plaintiff's good faith in bringing the application does not resolve whether changing Owen's name is in the child's best interest.

Reversed and remanded for further proceedings consistent with this opinion, including any supplemental submissions to the court on the issue of Owen's autism and additional testimony should the court deem it necessary. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11                                                    A-1849-22