**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3415-23

CYNTHIA VAN HOUTTE,

    Plaintiff-Respondent,

v.

DAVID VAN HOUTTE,

    Defendant-Appellant.

_____

> Argued May 13, 2025 – Decided July 23, 2025
>
> Before Judges Susswein and Perez Friscia.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FM-14-1156-17.
>
> Andrew M. Shaw argued the cause for appellant (Shaw Divorce & Family Law, LLC, attorneys; Andrew M. Shaw, on the briefs).
>
> Stephanie Frangos Hagan argued the cause for respondent (Hagan, Weisberg & Nunn, LLC, attorneys; Stephanie Frangos Hagan and Kaitlyn A. Lapi, on the brief).

PER CURIAM

In this post-judgment matrimonial case, defendant David Van Houtte appeals the May 24, 2024 Family Part order denying his motion to terminate his alimony payments to plaintiff Cynthia Van Houtte. Defendant contends there has been a change of circumstances based on plaintiff's alleged cohabitation with her neighbor-boyfriend. After considering the record in light of the parties' arguments and governing legal principles, we affirm.

I.

We discern the following pertinent facts and procedural history from the record. Plaintiff and defendant married in April 1996 and have two children together. On December 12, 2018, the parties entered into a property settlement agreement (PSA) and the trial court entered a dual judgment of divorce incorporating the PSA. The PSA provides that defendant will pay plaintiff spousal support for a fixed term of 12.9 years—$6,625 per month for 4.3 years, $5,500 per month for the next 4 years, and $4,500 per month for the remaining 4.6 years.

On March 19, 2024, defendant filed a motion to terminate alimony based on a changed circumstance that plaintiff is cohabiting with her neighbor-boyfriend. Defendant contends plaintiff and her neighbor-boyfriend (the couple) have been cohabitating "since as early as 2015." Defendant submitted

evidence from a private investigator's report (PI report) that shows plaintiff and her neighbor-boyfriend live across the street from each other and spent time together on fifteen of the nineteen days that they were surveilled. The PI report also includes photographs depicting them wearing rings on the ring-finger of their left hands.

The PI report also shows plaintiff walking on "her driveway carrying a Tupperware . . . presumably to [the neighbor-boyfriend's] residence" twice in the span of the nineteen-day investigation. The PI report further shows the neighbor-boyfriend collecting plaintiff's garbage bin three times, clearing plaintiff's driveway with a snow blower once, removing plaintiff's holiday decorations once, and carrying multiple items from his car into her home once.

The PI report also includes photos from the couple's social media accounts, including plaintiff's profile picture of the couple; the neighbor-boyfriend's profile picture, which shows plaintiff, photos from three or four vacations with their respective family members; and photos from six or seven events with their friends.

On May 24, 2024, the trial court heard oral argument on defendant's motion, after which the court concluded that defendant had not established a prima facie case of cohabitation. The court found:

> I don't think there's been a prima facie showing by [defendant] as to anything more than maybe one of these factors. Certainly there's been nothing as to finances. There's been nothing as to share [the couple's] joint responsibility for living expenses. There's been nothing with regard to sharing household chores.
>
> . . . At most we have a recognition of the relationship in the couple's social and family circle.

The trial court rejected defendant's argument that the first three years of the couple's relationship was a dating relationship and has since changed into a "more lasting relationship." The court stated,

> Honestly, I couldn't find that persuasive. I think I find more persuasive is the fact that it was in place since 2015. It was there for three years before the judgment of divorce and it's just sustained the same character. If there was something that changed with regard to the relationship as measured against what was taking place, the activities that were taking place between 2015 and 2018.
>
> The most obvious example is moving in together. That would've been an obvious change. But on its face, there's nothing that's been presented that shows that there's been a change. The only argument that's been presented is that it sustained.

The court concluded that defendant failed to establish "[a] prima facie showing of cohabitation and therefore there's no need for discovery."

A-3415-23

This appeal followed. Defendant contends he made a prima facie showing of cohabitation and the trial court therefore erred in denying his request for discovery and a plenary hearing.

## II.

We begin our analysis by acknowledging the foundational legal principles governing this appeal. We review the trial court's decision denying defendant's motion under a deferential standard, giving "due recognition to the wide discretion . . . our law rightly affords to the trial judges who deal with these matters." Cardali v. Cardali, 255 N.J. 85, 107 (2023) (quoting Spangenberg v. Kolakowski, 442 N.J. Super. 529, 536 (App. Div. 2015)) (internal quotation marks omitted). Appellate courts limit their review to the question of "whether the court made findings inconsistent with the evidence or unsupported by the record, or erred as a matter of law." Ibid. (quoting Reese v. Weis, 430 N.J. Super. 552, 572 (App. Div. 2013)). "However, to the extent that the trial court premised its decision on an interpretation of N.J.S.A. 2A:34-23(n), we review de novo that legal determination." Ibid. (citing W.S. v. Hildreth, 252 N.J. 506, 518 (2023)).

Turning to substantive legal principles, "[a]limony is an 'economic right that arises out of the marital relationship and provides the dependent spouse with

"a level of support and standard of living generally commensurate with the quality of economic life that existed during the marriage."'" Quinn v. Quinn, 225 N.J. 34, 48 (2016) (quoting Mani v. Mani, 183 N.J. 70, 80 (2005)). Alimony "may clearly be the subject of a voluntary and consensual agreement undertaken as part of the termination of marriage and divorce." Konzelman v. Konzelman, 158 N.J. 185, 194-95 (1999).

Alimony "may be revised and altered by the court from time to time as circumstances may require." N.J.S.A. 2A:34-23. In Lepis v. Lepis, 83 N.J. 139, 150-59 (1980), the Supreme Court explained that alimony modification is governed by the changed circumstances doctrine. "The equitable authority of a court to modify support obligations in response to changed circumstances, regardless of their source, cannot be restricted." Id. at 149.

"[T]he dependent spouse's cohabitation with another" is a changed circumstance. Id. at 151. In 2014, the Legislature enacted N.J.S.A. 2A:34-23(n) to provide a standard for trial courts to determine whether the record supports a finding of cohabitation. Cardali, 255 N.J. at 103-04. N.J.S.A. 2A:34-23(n) provides:

> Alimony may be suspended or terminated if the payee cohabits with another person. Cohabitation involves a mutually supportive, intimate personal relationship in which a couple has undertaken duties and privileges

that are commonly associated with marriage or civil union but does not necessarily maintain a single common household.

When assessing whether cohabitation is occurring, the court shall consider the following:

(1) Intertwined finances such as joint bank accounts and other joint holdings or liabilities;

(2) Sharing or joint responsibility for living expenses;

(3) Recognition of the relationship in the couple's social and family circle;

(4) Living together, the frequency of contact, the duration of the relationship, and other indicia of a mutually supportive intimate personal relationship;

(5) Sharing household chores;

(6) Whether the recipient of alimony has received an enforceable promise of support from another person within the meaning of subsection h. of R.S.25:1-5; and

(7) All other relevant evidence.

In evaluating whether cohabitation is occurring and whether alimony should be suspended or terminated, the court shall also consider the length of the relationship. A court may not find an absence of cohabitation solely on grounds that the couple does not live together on a full-time basis.

Under this statutory framework, the movant has the burden to show changed circumstances. As the Supreme Court explained in Cardali,

if the movant presents a certification supported by competent evidence as to at least some of the relevant factors, and if that evidence, if unrebutted, would sustain the movant's burden of proof as to cohabitation, the trial court should find that the movant has made a prima facie showing even if the spouse or civil union partner receiving alimony presents a certification contesting facts asserted by the movant.

[255 N.J. at 111.]

That said, we have emphasized that "a prima facie showing of cohabitation can be difficult to establish[.]"  Landau v. Landau, 461 N.J. Super. 107, 118 (App. Div. 2019) (citing Konzelman, 158 N.J. at 191-92).  We noted that this "is hardly a new problem" and "requiring the party seeking modification to establish '[a] prima facie showing of changed circumstances . . . before a court will order discovery of an ex-spouse's financial status,' . . . continues to strike a fair and workable balance between the parties' competing interests."  Id. at 118-19 (alteration in original) (citation omitted) (quoting Lepis, 83 N.J. at 157).  Our Supreme Court in Cardali made clear in this regard that "[a] prima facie showing of changed circumstances must be made before a court will order discovery of an ex-spouse's financial status."  255 N.J. at 101 (alteration in original) (quoting Lepis, 83 N.J. at 157).

III.

We next apply these legal principles to the present matter.  The trial court determined that, while defendant established statutory factor three, he failed to provide evidence to support the remaining factors and thus failed to present a prima facie case.  Because our review of the N.J.S.A. 2A:34-23(n) factors is de novo, Cardali, 255 N.J. at 107, we consider each factor in turn.  In doing so, we note that a movant need not establish all six factors[1] to make a prima facie case.  Nor do we merely count the number of factors established against the number for which no evidence is submitted.  Id. at 110-11.

With respect to N.J.S.A. 2A:34-25(n)(1) ("[i]ntertwined finances such as joint bank accounts and other joint holdings or liabilities"), defendant acknowledges that he "could not present evidence with respect to the first factor."  The trial court determined, "[c]ertainly there's been nothing as to finances."  As a result, factor one does not advance defendant's burden to present a prima facie showing of cohabitation.

With respect to factor two ("[s]haring or joint responsibility for living expenses[,]" N.J.S.A. 2A:34-25(n)(2)), defendant asserts he presented "some

---

[1]  The seventh factor is essentially a catchall for relevant evidence that does not otherwise fall into any of the six enumerated factors.

A-3415-23

evidence . . . (i.e., that plaintiff and [her neighbor-boyfriend] share responsibility for living expenses in the form of food)." Plaintiff counters that the Legislature did not envision that sharing food costs would establish factor two because "[i]f eating dinner together was sufficient to meet factor [two], then the floodgates of cohabitation applications would open."

The PI report shows plaintiff walking on "her driveway carrying a Tupperware . . . presumably to [the boyfriend-neighbor's] residence" twice in during the nineteen-day investigation. Defendant's complaint also asserts that the couple "share meals [five to six] days a week."

On these asserted facts, we are not persuaded that sharing some meals each week established sharing living expenses, which might include rent or mortgage payments, utilities, and similar recurring household expenses. Thus, on these facts, this factor does little to support a prima facie showing of cohabitation.

With respect to factor three ("[r]ecognition of the relationship in the couple's social and family circle[,]" N.J.S.A. 2A:34-25(n)(3)), defendant contends that he presented "substantial evidence[,]" including photographs of plaintiff and her neighbor-boyfriend travelling with their families, regularly attending family events, forming bonds with their respective children,

10

displaying each other in social media profile pictures, and "on at least one occasion, the couple had been referred to by friends as [spouses]"  Plaintiff acknowledges that defendant established factor three but argues that "the existence of a long-term dating relationship is not the only factor considered when adjudicating motions for cohabitation."  The trial court concluded that factor three was met, stating "[a]t most we have a recognition of the relationship in the couple's social media and family circle."

We agree that the record shows the couple's social and family circle recognize their relationship—a circumstance that militates in favor of defendant's underlying contention.  We note, however, that does not necessarily mean that the nature of their relationship has changed since the divorce was entered, since some form of relationship predates the divorce.

As to factor four ("[l]iving together, the frequency of contact, the duration of the relationship, and other indicia of a mutually supportive intimate personal relationship[,]" N.J.S.A. 2A:34-25(n)(4)), defendant asserts that the PI report showed that plaintiff and the neighbor-boyfriend "live across the street from one another and spent time together on every single day of surveillance."  Plaintiff responds that they do not live together, maintain separate residences, and do not spend extended periods of time together.  Furthermore, plaintiff contends that

defendant's PI report acknowledged that during the investigation, "there was not one single overnight between [them]."

We note that the trial court did not expressly address factor four, but instead explained that, since defendant claims the parties were dating in 2015, this factor could not have been part of a change in circumstances. We agree with the trial court that the evidence presented in the PI report does not necessarily establish a change in circumstances as to justify modification of the alimony order that was part of the PSA.

With respect to factor five ("[s]haring household chores[,]" N.J.S.A. 2A:34-25(n)(5)), defendant relies on the PI report which showed the neighbor-boyfriend doing chores around plaintiff's house including "snow blowing, tending to her garbage, taking down holiday decorations, taking plaintiff shopping, and unloading plaintiff's groceries." Plaintiff argues in response that "[u]nfortunately, the private investigator's short timeframe of surveillance (i.e. [nineteen] days) provides a skewed narrative as [plaintiff] was sick with the flu and pneumonia for most of the approximate two week timeframe." Moreover, plaintiff maintains they do not share "laundry, grocery shopping, landscaping, cleaning, cooking, etc."

The trial court found, "[t]here's been nothing with regard to sharing household chores." Our review of the PI report shows the neighbor-boyfriend collecting plaintiff's garbage bin three times, clearing plaintiff's driveway with a snow blower once, removing plaintiff's holiday decorations once, and carrying multiple items from his car into her home once. We conclude that factor five supports defendant's contention.

For factor six ("[w]hether the recipient of alimony has received an enforceable promise of support from another person within the meaning of subsection h. of R.S.25:1-5[,]" N.J.S.A. 2A:34-23(n)(6)), defendant stresses that he "again had no capacity to investigate this issue in the absence of discovery." Plaintiff argues that is a concession by defendant. The trial court found, "[n]umber [six] doesn't even seem to apply, whether the receipt of alimony has received an enforceable promise of support for the other person within the meaning of the subsection. You don't have anything to indicate that."

We acknowledge that this factor would be difficult to establish without discovery. We are reluctant, however, to put the cart before the proverbial horse by essentially using the absence of proof as a basis for establishing a prima facie showing as to entitle discovery. We reiterate our Supreme Court made clear that establishing a prima facie showing is needed before a trial court may order

13

discovery of an ex-spouse's financial status. See Cardali, 255 N.J. at 101. The "fair and workable balance between the parties' competing interests," Landau, 461 N.J. Super. at 118-19, could be upset if discovery of a former spouse's private financial affairs were ordered prematurely or based on speculation.

Considering the totality of the relevant factors, we are not persuaded that defendant has presented evidence that, if unrebutted, sustains his burden as to cohabitation. See Cardali, 255 N.J. at 111. We reiterate that the statute provides, "[a] court may not find an absence of cohabitation solely on grounds that the couple does not live together on a full-time basis." N.J.S.A. 2A:34-25(n). Here, it bears emphasis——and defendant's PI report acknowledges—plaintiff and her neighbor-boyfriend not only do not live together but do not have overnight stays. We are not persuaded, moreover, by defendant's contention that this lifestyle arrangement was designed to avoid the termination of alimony. We decline to speculate on the motivations undergirding their relationship, focusing instead on the objective proofs defendant has presented. In sum, we do not believe defendant has established a basis to overturn the trial court's decision. See Cardali, 255 N.J. at 107-08.

A-3415-23

To the extent we have not specifically addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division