**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1841-20

J.D.,

      Plaintiff-Respondent/
Cross-Appellant

v.

S.F.,

      Defendant-Appellant/
Cross-Respondent.

_____

      Argued June 15, 2022 – Decided July 1, 2022

      Before Judges Whipple, Geiger and Susswein.

      On appeal from the Superior Court of New Jersey,
      Chancery Division, Family Part, Monmouth County,
      Docket No. FM-13-1808-13.

      Donna L. Maul argued the cause for appellant/cross-
      respondent (Ansell Grimm & Aaron, PC, attorneys;
      Donna L. Maul, of counsel and on the briefs).

      Michael J. Gunteski argued the cause for
      respondent/cross-appellant (Senoff & Enis, attorneys;
      Michael J. Gunteski, on the briefs).

PER CURIAM

This highly contentious and litigious matrimonial proceeding began in 2013. To provide context to this post-judgment appeal from four Family Part orders, we begin by briefly discussing the underlying procedural history.

I.

Because we write primarily for the parties, who are familiar with the extensive record in this case, we briefly summarize the underlying facts, procedural history, and trial court decisions. We need not recount the detailed factual findings and legal analysis expressed by the trial court in its oral and comprehensive written decisions.

Plaintiff J.D.[1] and defendant S.F. were married on April 24, 1999. The parties have two children, S.D. (Sally), born in October 2004, and S.D. (Sandy), born in October 2008. Defendant, who is fifty-one years old, is still employed and has an annual income of approximately $83,000. Plaintiff, who is fifty-four years old, voluntarily retired from his job at Merck and is not receiving pension distributions or Social Security benefits.

---

[1] We refer to the parties and their children by initials and pseudonyms to protect their privacy. R. 1:38-3(d)(3), (9), (10), and (13).

On April 24, 2013, defendant sought a domestic violence temporary restraining order (TRO) against plaintiff after a verbal argument where plaintiff cursed at defendant in front of their children. The TRO alleged other instances of abuse including threats against defendant's life, as well as physical abuse, alleging plaintiff slammed defendant against their bedroom door. The TRO led to defendant leaving the marital home and filing for divorce.

On May 3, 2013, the parties entered into a consent order with civil restraints that dismissed the TRO and granted defendant pendente lite custody of the children. On July 18, 2013, the court awarded the parties joint legal custody of the children, with defendant designated as parent of primary residence (PPR) and plaintiff parent of alternate residence (PAR). Plaintiff's parenting time was restricted to weekly supervised visits at Healing Hearts in Ocean Township and public events. He was also granted daily FaceTime communication with the children.

A dual final judgment of divorce (JOD) was entered on June 2, 2014. The terms of a matrimonial settlement agreement (MSA) dated May 30, 2014, and a mediation agreement dated March 17, 2014, were incorporated into the JOD.

A-1841-20

The MSA did not contain an anti-Lepis clause.[2]  The JOD did not resolve the issues of custody and parenting time, and those issues were reserved pending a custody evaluation report from each party.  Both parties sought primary residential custody of their daughters, but pending the results of the psychological evaluations, they agreed to share joint legal custody, with defendant remaining the PPR.  They also agreed to contact each other through email about major issues concerning the children's health, education, and welfare.  Plaintiff's parenting time was enlarged to include one supervised weeknight dinner on Wednesdays, as well as attending the children's extracurricular activities.

In 2014, Doctors Charles Diament and Ryan Montgomery released their initial custody and parenting time evaluations, both containing similar information.[3]  Dr. Diament recommended a co-parenting therapist and opined that supervised parenting time was not necessary.  A plan to gradually reduce

---

[2]  An anti-Lepis clause waives the parties' rights to modify their fixed payment, or the established criteria of payment, for reasonably, foreseeable future circumstances that would otherwise give rise to judicial modifications of their agreement.  Morris v. Morris, 263 N.J. Super. 237, 241 (App. Div. 1993).

[3]  The reports are not included in the record on appeal, presumably because they were disseminated by the court under protective order.  The reports could have been included in a separate confidential appendix.  See R. 2:6-1(a)(3).

supervised parenting time until the children were fully adjusted to unsupervised parenting time was recommended.

On February 6, 2015, the court appointed attorney Robin Jill Schneider as parenting coordinator and directed her to make recommendations regarding the health, education, and welfare of the children. The court ordered the parties to attend parenting time mediation to establish a set parenting time schedule. The court advised that if mediation was unsuccessful, either party could request a plenary hearing.

On September 8, 2015, Dr. Diament's next report was released to counsel under protective order. Dr. Diament again opined that supervised parenting time was not necessary and that all supervision restrictions should be immediately lifted, but that both parties were locked into positions against one another.

A March 28, 2017 case management order (CMO) stated that the issue of child support when overnight parenting time was afforded remained unresolved and the distribution of retirement assets still must occur. On October 20, 2017, the court granted plaintiff unsupervised overnight parenting time from Saturday at 9:00 a.m. to Sunday at 8:30 p.m. Plaintiff was also granted mid-week non-overnight parenting time with Sandy on Wednesdays and with Sally on Thursdays.

A-1841-20

An October 24, 2017 protective order released treatment information to parenting coordinator Schneider and the children's medical professionals. A follow up protective order was entered on December 5, 2017, but neither party is in possession of the related report.

The Division of Child Protection and Permanency (DCPP) became involved in June 2017 after being referred by Sandy's pediatrician. Additional services were required, and the parties were required to comply with all services recommended by DCPP. A determination was made that Sandy needed to begin seeing a therapist. In 2017, Todd Traina, Psy.D. performed psychological evaluations of the parties and Dr. Zuckerman performed a psychosocial evaluation of Sandy. Both issued reports (the 2017 reports).

On February 15, 2019, the court ordered plaintiff responsible for the children's unreimbursed medical expenses through February 18, 2018, in the amount of $1,500.25.

On January 10, 2019, the court issued a pretrial order requiring the parties to use the Our Family Wizard website for parenting-related communications and with the consent of the parties, appointed Elise C. Landry, J.D., Ph.D. as a joint custody expert. On August 17, 2019, Dr. Landry issued a comprehensive

6

custody and parenting time evaluation report (the 2019 custody evaluation), which was released to the parties' attorneys subject to a protective order.

After considering Dr. Landry's custody evaluation, the parties consented to an October 21, 2019 order resolving all custody and parenting time issues. The consent order substantially expanded plaintiff's parenting time, gradually increasing it from no overnights to 52 overnights to 130 per year. This concluded the litigation as to custody and parenting time. Except for the issue of releasing the 2107 reports, the parties agreed to bifurcate the financial issues, which were largely prompted by plaintiff's application to recalculate child support premised on his increased overnight parenting time.

On October 21, 2019, the parties consented to a CMO regarding their financial issues, which outlined and enumerated the remaining contested issues. These included the issues of: (1) child support; (2) the children's extracurricular activity and ancillary expenses; (3) uncovered medical arrears and garnishment of plaintiff's probation account; (4) sanctions; (5) cell phone expenses for the children; (6) resolution of retirement accounts; and (7) counsel fees. Although custody and parenting time issues were resolved by the October 21, 2019 consent order, the order did not resolve plaintiff's request "for a recalculation of

A-1841-20

child support premised on his increased overnight parenting time with his daughters" under the consent order.

A January 15, 2020 order referred the remaining financial issues to economic mediation to resolve: (1) plaintiff's child support obligation from October 21, 2019 to June 30, 2020, and from July 1, 2020 forward; (2) defendant's obligation for the children's medical expenses from February 2018 to present; and (3) payment of defendant's equitable distribution share of plaintiff's Allianz Life Ins. Co. of N. Am. individual retirement account (Allianz IRA). The order also resolved the remaining issues enumerated in the October 21, 2019 CMO. Defendant appeals from paragraphs 14, 16, and 18 of the January 15 order.

The parties participated in economic mediation, which was unsuccessful. The case proceeded to a three-day video plenary hearing on September 25, September 28, and October 5, 2020. Defendant presented an updated CIS and list of 243 violations of litigant's rights before the hearing. Defendant contends plaintiff did not provide an updated case information statement (CIS) at this time and failed to include his pension and retirement package in his list of assets. During the hearing, the parties consented to an October 5, 2020 order regarding plaintiff's Allianz IRA.

On November 2, 2020, the court issued an order and accompanying statement of reasons. Importantly, the court found defendant's responses to questions

> were evasive and designed to re-direct the proceedings and deflect. This was particularly so when confronted on a variety of topics regarding the MSA including, but not limited to, the waiver of alimony and its impact on her assumption of the children's activities costs, the lack of an anti-Lepis clause in the agreement, and her assertions regarding her assumption of costs of the mortgage [on] the marital home, despite language in the MSA that [plaintiff] "shall convey all of his right, title and interest in and to the marital home to [defendant] upon signing of this Agreement" without the need for any payment. On those issues, her non-responsiveness, evasiveness and deflection demonstrated that her assertions regarding the past were post-hoc, fabricated rationalizations of the MSA constructed to advance her present theory of the case.

In contrast, the court found plaintiff was credible and candid.

Among other things, the court ordered: (1) for the period of October 21, 2019, through June 30, 2020, child support was reduced from $1,200 per month to $1,045 per month, based on 52 overnights per year; (2) effective July 1, 2020, child support was reduced to $613 per month, based on 130 overnights per year; (3) plaintiff to reimburse defendant for the following unreimbursed medical expenses: $2,707.41 through October 22, 2019, $159.74 from October 22, 2019 through December 31, 2019, and $914 from January 1, 2020 through June 1,

9

2020, with those amounts to be added to defendant's child support arrears; (4) going forward after June 1, 2020, plaintiff would be responsible for thirty-eight percent of unreimbursed medical expenses exceeding $250 per year per child; (5) entering judgment against plaintiff for unpaid counsel fees and adding those unpaid fees to his child support arrears. Defendant appeals from certain aspects of the November 2, 2020 order.

The court conducted a hearing on counsel fees and costs on November 6, 2020, and issued an order and oral decision denying both parties' applications, finding "any appropriate fees offset" each other.

Two consent orders were entered on December 9, 2020. In the first, the parties agreed to comply with any medication protocols prescribed for Sandy. In the second, the parties agreed to permit Noel S. Tonneman, the court-appointed attorney for the children, to contact school and medical professionals that provided services to Sandy.

Defendant moved for reconsideration of the January 15, 2020 order and portions of the court's November 2, 2020 order. Defendant's main contention was that the trial court mishandled plaintiff's assets and set child support too low. Defendant also argued that she was entitled to a credit for paying the children's activity and childcare costs.

The court issued a January 25, 2021 order that granted reconsideration in part. Relevant to this appeal, the court increased child support to $651 per month effective July 1, 2020. It also adjusted his probation account by adding a total of $61.50 for unreimbursed medical expenses incurred between October 22, 2019 and June 1, 2020 to plaintiff's child support arrears. This was based on defendant being responsible for sixty-two percent and plaintiff thirty-eight percent of the unreimbursed medical expenses. The court included plaintiff's $140,000 settlement in the calculation of his net assets but denied considering the value of his pension and retirement package in the calculation of his net assets and child support obligation. The court denied defendant's request for more specific findings establishing the child support obligation. The court denied or found moot numerous other aspects of defendant's motion.

This appeal followed. Plaintiff cross-appealed from the child support rulings contained in the November 2, 2020 and January 25, 2021 orders.

Defendant raises the following points for our consideration:

> POINT I
>
> THE TRIAL COURT ERRED IN DENYING THE REQUESTED ANNUAL $5,000 ESCROW FOR THE CHILDREN'S UNCOVERED HEALTH EXPENSES IN LIGHT OF [PLAINTIFF'S] HISTORY OF NON-PAYMENT AND REPEATED ENFORCEMENT ISSUES OVER THE YEARS.

POINT II

THE 2017 PSYCHOLOGICAL EVALUATION REPORTS FOR EACH PARTY, AND [SANDY'S] PSYCHOSOCIAL REPORT ALL UNDERTAKEN DURING INVESTIGATION BY DCP&P SHOULD BE RELEASED TO THE TREATING PROFESSIONALS FOR EACH PARTY AND [SANDY] IN THE INTEREST OF INFORMED, QUALITY AND EFFECTIVE CONTINUITY OF CARE AND PURSUANT TO N.J.S.A. 9:6-8.10a(b)(5), (6), (11), (b)(16) AND (b)(23).

POINT III

THE COURT DISREGARDED CERTIFIED STATEMENTS OF [DEFENDANT] ON THE ISSUES OF THE SPECIFIED VIOLATIONS BY [PLAINTIFF'S] FAILURE TO ADDRESS THEM AS DETAILED IN [PLAINTIFF'S] CERTIFICATION, ERRED IN FAILING TO IMPOSE SANCTIONS (INCLUDING COUNSEL FEES) AGAINST [PLAINTIFF].

POINT IV

THE COURT'S FAILURE TO HONOR THE GLOBAL DIVORCE AGREEMENT INCORPORATED IN THE FINAL JUDGEMENT OF DIVORCE RESULTED IN UNDUE PREJUDICE TO [DEFENDANT] ON THE ISSUE OF CHILD SUPPORT AND REALLOCATION OF MEDICAL EXPENSES.

POINT V

THE COURT'S FAILURE TO ATTRIBUTE VALUE TO [PLAINTIFF'S] PENSION FOR PURPOSES OF ASSET RECOGNITION AND TO SUPPLEMENT

12

THE INCOME COMPONENT OF HIS COMPENSATION PACKAGE OF CHILD SUPPORT CALCULATION, RESULTED IN UNJUST ENRICHMENT OF [PLAINTIFF] IN THE COURT'S ABOVE GUIDELINES CHILD SUPPORT CALCULATION AT THE EXPENSE OF [DEFENDANT] AND THE CHILDREN.

POINT VI

THE COURT'S FAILURE TO CONSIDER [PLAINTIFF'S] PENSION VALUE AND $183,654.05 SEVERANCE/VACATION PAYOUT AS ASSETS WHEN HE VOLUNTARILY LEFT HIS EMPLOYMENT AND CHOSE NOT TO RESUME OTHER EMPLOYMENT IS MATERIAL ERROR.

POINT VII

THE COURT'S FAILURE TO CORRECT PARAGRAPHS 12 AND 15 OF ITS OPINION DATED NOVEMBER 2, 2020 TO REFLECT PROPER TOTAL UNEARNED AND EARNED INCOME OF [PLAINTIFF] IS MATERIAL ERROR, AS THE COURT'S FAILURE TO DECLARE [PLAINTIFF'S] CASE INFORMATION STATEMENTS.

POINT VIII

THE COURT'S DENIAL OF COUNSEL FEES REQUIRES REMAND TO ADDRESS THE TOTAL ASSETS OF EACH PARTY, INCLUSIVE OF PENSION AND SAVINGS, AND MAKE APPROPRIATE FINDINGS OF FACT UNDER WILLIAMS V. WILLIAMS.[4]

---

[4] Williams v. Williams, 59 N.J. 229 (1971).

On cross-appeal, plaintiff argues:

THE TRIAL COURT FAILED TO REDUCE CHILD SUPPORT BELOW THE GUIDELINES BASED ON THE DISPROPORTIONATE ABOVE THE GUIDELINES INCOME OF THE PARTIES AND THE FACT THAT CHILD SUPPORT PAYOR EARNS SIGNIFICANTLY LESS THAN THE PAYEE.

II.

We affirm substantially for the reasons expressed by the trial court in its comprehensive oral and written decisions. Our careful review of the expansive record convinces us that the trial court's factual findings and credibility determinations are supported by substantial credible evidence in the record, and its legal conclusions are consonant with applicable legal principles. We add the following comments.

A.

Our review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). Appellate courts "review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare, 154 N.J. at 413). Thus, "findings by the trial court are binding on appeal when supported by adequate, substantial,

14

credible evidence." Cesare, 154 N.J. at 412-13 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). Accordingly, we will not "disturb the 'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Cesare, 154 N.J. at 412 (quoting Rova Farms, 65 N.J. at 484).

"We invest the family court with broad discretion because of its specialized knowledge and experience in matters involving parental relationships and the best interests of children." N.J. Div. of Youth & Fam. Servs. v. F.M., 211 N.J. 420, 427 (2012). We accord "great deference to discretionary decisions of Family Part judges." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012). However, we review de novo "the trial judge's legal conclusions, and the application of those conclusions to the facts[.]" Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015) (quoting Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

Under N.J.S.A. 2A:34-23, the Family Part has the authority to modify child-support "from time to time as circumstances may require." Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015) (quoting N.J.S.A.

2A:34-23). "Our courts have interpreted this statute to require a party who seeks modification to prove 'changed circumstances[.]'" Id. at 536 (alteration in original) (quoting Lepis v. Lepis, 83 N.J. 139, 157 (1980)). The Family Part's consideration of "changed circumstances" includes a change in the parties' financial circumstances, whether the change is continuing, and whether the parties' agreement "made explicit provision for the change." Ibid. (quoting Lepis, 83 N.J. at 152).

Child support awards are governed by Rule 5:6A. The child support guidelines "may be modified or disregarded by the court only where good cause is shown." R. 5:6A. In this context,

> [g]ood cause shall consist of a) the considerations set forth in Appendix IX-A, or the presence of other relevant factors which may make the guidelines inapplicable or subject to modification, and b) the fact that injustice would result from the application of the guidelines. In all cases, the determination of good cause shall be within the sound discretion of the court.
>
> [Ibid.]

"When reviewing decisions granting or denying applications to modify child support, we examine whether, given the facts, the trial judge abused his or her discretion." J.B. v. W.B., 215 N.J. 305, 325-26 (2013) (quoting Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012)). "The trial court's 'award

16

will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice.'" J.B., 215 N.J. at 326 (quoting Jacoby, 427 N.J. Super. at 116).

A parties' settlement agreement or subsequent consent order may reasonably limit the circumstances that may qualify as "changed" by including an anti-Lepis clause. Quinn v. Quinn, 225 N.J. 34, 49-50 (2016). Anti-Lepis clauses are subject to enforcement where the parties "with full knowledge of all present and reasonably foreseeable future circumstances bargain[ed] for a fixed payment or establish[ed] the criteria for payment[,] . . . irrespective of circumstances that in the usual case would give rise to Lepis modifications of their agreement." Morris, 263 N.J. Super. at 241. The Family Part will not unnecessarily or lightly disturb such arrangements if the arrangements are "fair and definitive[.]" Quinn, 225 N.J. at 44 (quoting Konzelman v. Konzelman, 158 N.J. 185, 193-94 (1999)). Nor may the court rewrite the agreement "or grant a better deal than that for which the parties expressly bargained." Id. at 45.

B.

Guided by these principles, we reject defendant's argument that the trial court erred by reducing the $1,200 per month child support obligation established by the MSA based on the increase in overnight parenting time

17

awarded to plaintiff, and the parties' respective income levels. Under the October 2021 consent order, plaintiff's overnight parenting-time increased to 130 overnights per year. This significant increase in overnight parenting time occurred years after the JOD, which incorporated the terms of the MSA, was entered.

Defendant contends the reduction is prejudicial to her because she made concessions as part of the global settlement agreement, including being responsible for the entire cost of the children's extracurricular activities, which allegedly exceed $40,000 annually, based on the amount of child support she would receive. Defendant claims that but for the $1,200 per month child support level, she would not have made the concessions. She argues that the court's discretion is limited when considering overnight parenting-time adjustments. Defendant contends the parties intended the child support level to be unaffected by modification of the number of parenting-time overnights each parent received. She further contends that reducing the level of child support impairs her ability to afford household expenses while maintaining the children's lifestyle. We are unpersuaded.

We first note that the child support obligation set by the MSA was an above-the-guidelines level of support based on the parties' respective incomes.

Plaintiff is now retired but not yet receiving pension distributions or Social Security benefits due to his age. In contrast, defendant is still employed.

The parties were represented by counsel during the negotiation of the MSA, the divorce action, and the negotiation of the consent order. The MSA does not contain a child support anti-Lepis clause. Nor does it contain other language indicating that an increase in plaintiff's overnight parenting time would not be a basis to modify child support. Absent such language, child support remained modifiable based on substantially changed circumstances. Plaintiff was not barred or estopped from seeking the child support reduction.

Had the parties intended to render the amount of child support fixed and to waive the right to seek modification based on a change in overnight parenting time or other changed circumstance, an anti-Lepis clause to that effect could easily have been included in the MSA. It was not. Defendant does not attack the validity of the MSA—she seeks to enforce it as written. We too interpret the MSA as written.

Notably, the JOD and incorporated MSA did not resolve the issues of custody and parenting time, and those issues were reserved pending a custody evaluation report from each party. Both parties were seeking primary residential custody of their daughters. Defendant is therefore hard pressed to argue that the

child support was fixed and not subject to modification due to significant changes in overnight parenting time when custody and parenting time remained at issue.

By any measure, the increase in overnight parenting time to 130 days per year was a substantially changed circumstance. The annual number of overnight parenting times is a factor under the child support guidelines shared parenting schedules. See Child Support Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendices IX-A(14)(c)(2) and IX-D to R. 5:6A, www.gannlaw.com (2022). The shared parenting schedules apply when the children spend at least twenty-eight percent of the overnights with the PAR. Appendix IX-A(14)(c)(2). Here, the children now spend 130 overnights per year with plaintiff, equaling approximately thirty-six percent of the total. Therefore, the shared parenting schedule applies. Appendix IX-A(14)(c)(2).

The shared parenting schedules recognize that increasing the number of overnights that the children spend with the PAR increases the PAR's "variable costs (e.g., food, transportation, and some entertainment)" incurred by the PAR. Appendix IX-A(13)(a)(2). In turn, it decreases the variable costs incurred by the PPR.

20

The guidelines assume that thirty-seven percent of the spending on children is for variable costs. Appendix IX-A(14)(g)(1). Variable costs "are apportioned based on each parent's percentage of overnights with child." Appendix IX-A(14)(g)(3). Plaintiff's increased overnight parenting time proportionately increases his variable costs. This impact remains a factor even when the child support is set at an above-guidelines level. See Appendix IX-A(20)(b) (explaining that if the parties combined annual net income exceeds $187,200, "the court shall apply the guidelines up to $187,200 per year," then and "a discretionary amount based on the family income" exceeding $187,200 "and the factors specified in N.J.S.A. 2A:34-23."); Caplan v. Caplan, 182 N.J. 250, 271 (2005) (stating that when considering the above-Guidelines amount, "the trial court must consider the factors set forth in N.J.S.A. 2A:34-23(a) to determine the amount of the supplemental support award and then combine that amount with the guidelines-based award.").

Applying these principles to the facts in this case, the court properly considered the substantial increase in plaintiff's overnight parenting time in deciding his child support reduction application. Ignoring his increased overnight parenting time would have been contrary to the guidelines and Caplan.

The November 2, 2020 order reduced plaintiff's child support obligation to $1,045 per month from October 21, 2019, through June 30, 2020, and effective July 1, 2020, child support was further reduced to $613 per month.

Defendant claims plaintiff's pension should have been considered as income because not doing so artificially understated his income for child support purposes and resulted in unjust enrichment. Next, defendant argues that the court did not consider plaintiff's significant ($183,654) severance and vacation package with the pension, and that plaintiff voluntarily left his job. Defendant further argues that the court made material errors in calculating the parties' total and unearned income, as well as in not declaring plaintiff's case information statement incomplete.

On cross-appeal, plaintiff argues that there should not be an increase in his child support paid to defendant because the trial court found defendant to be the higher earning spouse.

As correctly noted by the trial court, plaintiff is not able to access or receive distributions on his pension until he is fifty-five years old. Plaintiff's pension distributions will be included in his income for child support purposes when he begins to receive them, which plaintiff acknowledges. This does not constitute unjust enrichment. The court had already imputed an annual income

22

of $151,000 to plaintiff. The record supports the court's conclusion that the parties' actual and imputed income allow them to adequately support their children and keep their lifestyles at a level that they are used to living. While defendant contends the court did not list the specific assets in reaching this conclusion, the court had, in fact, listed defendant's $600,000 home, $40,000 car, and her more than $50,000 in investments.

The MSA considered the parties' income in imposing an above-the-guidelines child support obligation. The parties mutually agreed to waive alimony and included an anti-Lepis clause that precluded an alimony award based on a future change in circumstances. Under the MSA, defendant took financial responsibility for the children's ancillary costs, including their extra-curricular activities. The court aptly found that defendant was now trying to ascribe these expenses to plaintiff even though they were her responsibility under the MSA. Thus, defendant's argument that she should receive a $41,000 credit for such expenses is contrary to the MSA.

Regarding plaintiff's severance package from Merck, the court found that those assets were considered in previous child support orders. The court concluded that it would be illogical to both impute income to plaintiff in the

A-1841-20

amount of $151,000 and then add his severance pay, which would total more than he earned while employed full-time.

The record demonstrates that the court considered the information contained in both parties' CISs. The court amended its decision to include the $140,000 settlement plaintiff received into his income. The court also realized its error in relying on the earlier child support guideline calculations and recalculated the child support to reflect the settlement, finding it added $25 per week. The court also included an additional $27 attributable to health insurance costs. These additions changed child support to $651 per month.

We discern no abuse of discretion. The trial court's lengthy, comprehensive decision considered the submissions and relevant factors. The court's findings are supported by substantial, credible evidence in the record. We find no basis to disturb the child support determination or to remand for recalculation.

## C.

Defendant argues the trial court erred in denying her application to release the Dr. Traina's 2017 psychological evaluation reports and Dr. Zuckerman's 2017 psychosocial evaluation report for Sandy. Defendant argues that Sandy's current treating therapists, the parties' co-parenting therapists, and the parties'

individual treating therapists should have access to Sandy's history and the relevant psychological reports. We are unpersuaded.

Pursuant to N.J.S.A. 9:6-8.10a(a), information obtained by DCPP pertaining to child abuse reports and investigations is to be kept confidential. While the statute contains numerous exceptions, "nothing may be disclosed which would likely endanger the life, safety, or physical or emotional well-being of a child or the life or safety of any other person or which may compromise the integrity of a department investigation or a civil or criminal investigation or judicial proceeding." N.J.S.A. 9:6-8.10a(a). Defendant relies upon the exceptions enumerated in N.J.S.A. 9:6-8.10a(b)(5), (6), (11), (16) and (23). Those exceptions do not appear to apply here.

Subsection (b)(5) allows disclosure to public or private agencies. Subsection (b)(6) allows disclosure to courts and the Office of Administrative Law. Subsection (b)(11) allows disclosure to the Victims of Crime Compensation Board. Subsection (b)(16) allows "[a] person being evaluated by the [Department of Children and Families] or the court as a potential care-giver to determine whether that person is willing and able to provide the care and support required by the child[.]" Neither the Department of Children and Families nor the court are currently conducting such an evaluation. Subsection

25

(b)(23) allows disclosure to "[m]embers of a family team or other case planning group formed by the [DCPP] . . . ." Here, the DCPP investigation is closed, and custody issues were resolved by the October 21, 2019 order.

The 2017 reports are now dated. When issued, the children were nine and thirteen years old, respectively. They are now thirteen and seventeen years old. In the intervening years, the parties have resolved their custody dispute through the October 2019 consent order. Parenting time was also resolved. The court determined the 2017 reports were no longer relevant to deciding custody. We agree since there was no pending custody or parenting time application when the court reached that conclusion.

Moreover, the parties' attorneys are in possession of Dr. Landry's comprehensive, ninety-nine-page custody evaluation report, which recounts in detail the prior evaluations, diagnoses, treatment recommendations, and therapy. See State v. Cusick, 219 N.J. Super. 452, 455-59 (App. Div. 1987) (holding that the trial court's refusal to grant defendant access to files of child sexual assault victim maintained by the Division of Youth and Family Services and child treatment center, after trial court conducted in-camera inspection and concluded information was available elsewhere and that information sought was not

determinative of any issue before the court, did not violate defendant's state or federal constitutional rights).

Notably, defendant does not contend, much less demonstrate, that Sandy's treating therapists, the parties' co-parenting therapists, or the parties' treating therapists have expressed the need for the 2017 reports to facilitate their therapy of Sandy or the parties. Defendant's unsubstantiated need for the reports is at best speculative. For these reasons, we discern no abuse of discretion or other basis to disturb paragraph sixteen of the January 15, 2020 order.

D.

Defendant further argues that the trial court disregarded her violation of litigant's rights application because it imposed sanctions against her. We disagree.

Rule 1:10-3 provides that a litigant may seek relief for violation of litigant's rights by application in the action. The court may award counsel fees to a party granted relief under the rule. "In family actions, the court may also grant additional remedies as provided by [Rule] 5:3-7." R. 1:10-3.

Decisions on sanctions imposed for violating a court order are addressed to the discretion of the trial judge. Kornbleuth v. Westover, 241 N.J. 289, 300 (2020). "Relief under [Rule] 1:10-3, whether it be the imposition of

incarceration or a sanction, is not for the purpose of punishment, but as a coercive measure to facilitate the enforcement of the court order." A.J. v. R.J., 461 N.J. Super. 173, 181 (App. Div. 2019) (quoting Ridley v. Dennison, 298 N.J. Super. 373, 381 (App. Div. 1997)).

Although defendant claims the court ignored all the 243 violations that she asserted against plaintiff, the record reflects the court considered her allegations. Indeed, the January 15, 2020 order specifically addressed the violations and imposed sanctions on plaintiff, to be paid directly to defendant's counsel. The court noted that several of the entries on the spreadsheets submitted by defendant refer to plaintiff's "previously adjudicated violations for failure to pay for the children's medical expenses." The court further found that certain actions and statements by plaintiff were "inexcusable," including cursing at defendant and calling her names. The court also found that plaintiff failed to pay previously ordered medical arrears, harassed and threatened defendant in violation of their MSA, and failed to submit the name of a therapist for the children. As a result, the court ordered plaintiff to pay $1,500 to defendant's counsel, along with enforcing the unpaid medical expenses.

In part, defendant seemingly seeks to sanction plaintiff to punish him for things he did that she did not agree with. As we have noted, relief under Rule

1:1-3 is not aimed at imposing punishment but should always consider the best interests of the children.  A.J., 461 N.J. Super. at 181.  The sanctions imposed were not an abuse of discretion.

E.

Finally, defendant also argues that a remand is required to address the total assets of each party, including pension funds and investments, to provide a more accurate financial picture allowing the court to make appropriate findings of fact regarding counsel fees.  Defendant contends plaintiff submitted an incomplete CIS that did not disclose his pension assets and severance package.

"[T]he award of counsel fees and costs in a matrimonial action rests in the discretion of the court."  Williams, 59 N.J. at 233.  We will not disturb a counsel fee decision in matrimonial matters absent a showing of "an abuse of discretion involving a clear error in judgment."  Tannen v. Tannen, 416 N.J. Super. 248, 285 (App. Div. 2010).

The trial court performed an analysis of the pertinent factors and found each party was able to pay their own counsel fees.  The court also found that neither party was acting in bad faith, although they "were somewhat less than reasonable at . . . various times."  The court acknowledged that plaintiff has been ordered to pay counsel fees twice before and that his use of self-help was

29

impermissible. The court noted that the main issue was child support, not the Allianz IRA or medical expenses. The court considered the reasonableness of the parties at various stages of the proceedings. The court compared the amount of child support involved to the amount of counsel fees sought by defendant. While the hourly rate was found reasonable, the court found the amount of counsel fees sought for the child support aspect of the proceedings were unreasonable. The court also considered the relative success of the various applications and the relief obtained. The court ultimately determined that each party was entitled to an award of twelve hours of attorney time, so it was a wash.

The trial court made adequate findings. The record supports those findings. Applying our deferential standard of review, we find no abuse of discretion. A remand is not necessary.

F.

Defendant argues the trial court erred by denying her request to establish a $35,000 escrow account for the children's medical expenses. We disagree.

N.J.S.A. 2A:34-23 permits a family court, after a divorce, to "make such order . . . as to the care, custody, education and maintenance of the children . . . including, but not limited to, the creation of trusts or other security devices, to assure payment of reasonably foreseeable medical and educational expenses."

30

Un-reimbursed medical expenses "are intended to provide essential benefits to the parties' children." Gotlib v. Gotlib, 399 N.J. Super. 295, 306 (App. Div. 2008) (citing L.V. v. R.S., 347 N.J. Super. 33, 41 (App. Div. 2002)). However, "[a] parent from whom financial contribution is sought nevertheless retains the right to challenge the reasonableness of the medical expenses." Ibid.

The trial court found plaintiff owed medical reimbursement. He admitted the arrearages and did not object to paying them. The medical reimbursement arrears were added to his child support probation account. In addition, the court had previously awarded defendant a $1,500 counsel fee related to the medical reimbursement arrearages. The trial court found that plaintiff's proposal for a quarterly compilation of expenses to be more practical than an escrow account.

We review the denial of equitable remedies for abuse of discretion. Sears Mortg. Corp. v. Rose, 134 N.J. 326, 354 (1993). See also Kaye v. Rosefielde, 223 N.J. 218, 231 (2015) (noting that a Chancery judge has broad discretionary power to adapt equitable remedies to the specific circumstances of a case). We discern no such abuse of discretion.

## G.

Defendant also appeals from the partial denial of her motion for reconsideration. Rule 4:49-2 permits reconsideration if the trial court has either

"expressed its decision upon a palpably irrational basis decision" or "it is obvious that the court either did not consider, or failed to appreciate the significance of probative, competent evidence." Kornbleuth, 241 N.J. at 301 (quoting Guido v. Duane Morris LLP, 202 N.J. 79, 87-88 (2010)). "We will not disturb the trial court's reconsideration decision 'unless it represents a clear abuse of discretion.'" Ibid. (quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994)).

The trial court granted reconsideration in part. For the reasons we have already discussed, and the reasons expressed by the trial court, the denial of the remaining aspects of defendant's motion for reconsideration was not a clear abuse of discretion.

To the extent we have not addressed them, any remaining arguments raised by defendant lack sufficient merit to warrant discussion in a written decision. R. 2:11-3(e)(1)(E).

III.

In his cross-appeal, plaintiff argues the trial court erred by not reducing child support below the guideline amount even though plaintiff earns significantly less than defendant. He contends that if the parent receiving child support is earning more than the payor, there should be no upward modification

from the guidelines. Plaintiff asserts that the higher level of support he was ordered to pay impairs his ability to provide his daughters with the lifestyle he could otherwise provide during his parenting time.

Plaintiff cites no case law in support of his argument other than cases that discuss considering the best interests of the children when determining child support, including Musico v.Musico, 426 N.J. Super. 276 (Ch. Div. 2012). In Musico, the court held:

> [W]hen parties have previously and knowingly entered into an above-guideline child support agreement, and when there is a subsequent change of circumstances warranting a child support review, the guidelines must initially be applied. However, the support analysis does not artificially end with the guidelines alone. Rather, the prior agreement and present status quo may serve as additional equitable factors for the court to consider in determining a new child support figure, which may remain above the guidelines as equity requires.
>
> [Id. at 279.]

Plaintiff also relies on the child support factors enumerated in N.J.S.A. 2A:34-23(a), including the "[n]eeds of the child" and the "[s]tandard of living and economic circumstances of each parent[.]" N.J.S.A. 2A:34-23(a)(1), (2).

As noted by plaintiff, the trial court discussed the children's "entitlement to share in a parent's good fortune[,]" citing Isaacson v. Isaacson, 348 N.J. Super. 560, 582 (App. Div. 2002). (Aa2966). In Isaacson, we discussed the "careful

balancing of interests reflecting that a child's entitlement to share in a parent's good fortune does not deprive either parent of the right to participate in the development of an appropriate value system for a child." Ibid.

Although the principles espoused by plaintiff may be important in certain cases, we do not view the financial circumstances in this case to require a further reduction in child support to meet the best interests of the children. Plaintiff's child support obligation is not driving him into financial ruin. Moreover, plaintiff chose to retire from Merck at age fifty-one. To our knowledge he has not returned to employment and will soon begin receiving pension benefits. We also note that defendant pays for the children's costly extra-curricular activities. We discern no basis to disturb the child support order under plaintiff's theory.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1841-20